# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TERRY LEHMAN,**

    **Petitioner,**

**v.**                                                        **Civil Action No. 1:10cv133**
                                                                    **(Judge Keeley)**

**WARDEN TERRY O'BRIEN,**

    **Respondent.**

## REPORT AND RECOMMENDATION

On August 27 2010, the *pro se* petitioner, Terry Lehman filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is currently confined at U.S.P. Hazelton, following revocation of his mandatory release. On October 12, 2010, an Order to Show Cause was issued. On November 9, 2010, the respondent filed a Motion to Dismiss or for Summary Judgment and a Response to the Show Cause Order. On November 10, 2010, a Roseboro Notice was issued, and on December 2, 2010, the petitioner was granted an addition twenty-eight (28) days to reply. Despite this extension, the petitioner has not filed a reply. Accordingly, this matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2 is ripe for review.

## I.  FACTUAL AND PROCEDURAL HISTORY

The petitioner has a particularly lengthy criminal history which is set forth in detail in the petitioner's Presentence Report, dated August 20, 1986. (Doc. 18-2, pp. 1-7). The petitioner's federal sentence arose while he was in the custody of the State of Georgia serving an aggregate 35-

year sentence for manslaughter, unauthorized possession of a weapon by an inmate, aggravated assault on a prison guard, and forcing a fellow inmate to perform a sexual act. On February 25, 1985, the petitioner mailed threatening letters to two jurors. Following an investigation by the FBI, a Grand Jury in the Southern District of Georgia returned a two-count indictment on January 15, 1986, charging the petitioner with Threatening a Juror and Mailing Threatening Communications. Following a jury trial, the petitioner was found guilty on the two counts charged in the indictment. On August 26, 1986, the District Court sentenced the petitioner for imprisonment for ten years. On February 26, 1987, the same court sentenced the petitioner to a consecutive three years for assault.[1]

The petitioner remained in state custody until September 2, 1999, when he was released to federal custody and began serving his federal sentences. (Doc. 17-3, p. 3). The United States Parole Commission ("Commission") conducted an initial parole hearing on July 2, 2003. After determining the petitioner's salient score was 1, offense behavior severity rating was Category Five, and parole guideline range was 60-80 months (with the inclusion of additional time because the petitioner had committed four disciplinary infractions in prison), the Commission determined that discretionary parole was not warranted and departed above the guidelines. Accordingly, the Commission's decision was to continue the petitioner's incarceration to expiration and schedule an interim hearing during July 2005. (Doc. 17-5). On appeal, the National Appeals Board found no merit in the petitioner's claim that the decision above the guidelines was based on inaccurate information. Accordingly, the Commission's decision was affirmed in all respects. (Doc. 17-6).

The Commission was never able to conduct a subsequent hearing because the petitioner

---

[1]This charge arose on July 21, 1986, during the trial on threatening the jurors. The petitioner struck Assistant United States Attorney Kathryn M. Aldridge in the mouth with his fist. (Docs. 17-2, 18-3).

2

refused to proceed with his next scheduled (interim) hearing without reviewing his file. Contrary to its usual procedure, the Bureau of Prisons ("BOP") refused to allow the petitioner to review the file with his case manager because of his prior disciplinary violations involving sexual innuendo directed to the case manager. While the BOP offered to make photocopies available to the petitioner if he requested them, he refused to do so. Accordingly, the petitioner was placed on Waiver Status for his Statutory Interim Hearing. (Docs. 17-7, 17-8).

The petitioner was mandatorily released from custody on May 2, 2008, with 1509 days remaining on his sentence. [2](Doc. 17-9). Upon release, the petitioner was to remain under the jurisdiction of he USPC as if on parole, subject to the conditions attached to his Certificate of Mandatory Release. Pursuant to 18 U.S.C. § 4164, he remained subject to those conditions until June 12, 2012, which would be the expiration of the maximum term, or terms of his sentence, less 180 days. (Doc. 17-9, p. 1).

Three days after his mandatory release, the United States Probation Office ("USPO") requested that the petitioner be returned to federal custody or civilly committed based on his pre- and post-release behavior and comments to his probation officer. (Doc. 17-11). In response, the Commission contacted the USPO and advised that the Commission did not have the authority to initiate civil commitment but could add a special condition requiring mental health aftercare once the USPO made a formal request. (Doc. 17-12). The petitioner refused to sign a waiver for the special condition but later agreed to attend mental health treatment as part of his conditions of residency at the Union Mission. (Doc. 17-3, p.1).

---

[2]The petitioner was released pursuant to 18 U.S.C. § 4163 which provides as follows: "...a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct."

On May 7, 2008, upon entering the courthouse to report to the USPO, the petitioner told the court security officers that they did "not look so tough." The officers believed his comments to be threatening and notified the presiding judge, who barred him from the courthouse. Despite being notified of this prohibition, the petitioner entered the courthouse on May 27, 2008, and was subsequently escorted out of the building. (Doc. 17-3, p. 2).

On August 6, 2008, during the course of investigating the petitioner's request to move in with his girlfriend, the petitioner's probation officer learned that the girlfriend had a criminal record and was then on probation. The probation officer denied the petitioner's request to move in with her and further directed him not to have any further contact with her given her criminal history. The petitioner became verbally abusive. The following day, he called the police and probation office, complained about his probation officer allegedly not treating him fairly, and made threatening comments each time. To the police, he stated he would not go back to jail for a "petty offense. The only way I am going back is for homicide." To the probation office, he stated: "I know how I am, I have mental problems and I've got a homicide charge already, it's just a matter of time, and it's bound to happen again." (Doc. 17-13, pp. 5-7). Later that same day, he arrived at the courthouse in the company of his girlfriend, tried to enter the building, and refused instructions to leave the premises. He was taken into custody and a criminal complaint signed against him charging him with threatening to assault federal officers and criminal trespass. (Doc. 17-3, p. 8).

On August 11, 2008, the Commission issued a warrant for violation of one or more conditions of his release. (Doc. 17-14). Thereafter, the petitioner was indicted for Threatening a Federal Official in violation of 18 U.S.C. § 115, but it was pled down to a petty offense. He was sentenced to thirty (30) days with credit for time served. (Doc. 17-15, p. 1).

Following a December 15, 2009 hearing in Savannah, the Commission issued a notice of action revoking the petitioner's mandatory release, ordering forfeiture of time spent on parole ("street time"), and continuing his incarceration to the expiration of his sentence. The Commission found that the petitioner had committed all three charged violations,[3] calculated his salient factor score as 2, offense behavior severity rating as Category Four, and parole guideline range as 33-44 months, and departed above the guideline range. (Doc. 17-18, p. 2). The petitioner filed an administrative appeal which the Commission rejected before affirming its previous decision. (Doc. 13).

## **II. CLAIMS OF PETITIONER**

The petitioner sets forth the following claims in support of his habeas petition:

1. The Commission relied on erroneous information, and the actual facts justify a different decision on the issue whether he violated Charge No. 2, Association with a Person Having Criminal Record/Engaged in Criminal Activity;

2. The Commission relied on erroneous information, and the actual facts justify a different decision on the issue whether he violated Charge No. 3, Threatening to Assault Federal Officers;

3. The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody);

4. The Commission applied a statute or regulation incorrectly in determining his period of imprisonment as a supervised release violator, and/or his further term of supervised release; and

5. A decision outside the guidelines was not supported by the reasons or facts stated in the

---

[3]The three charges were: (1) Criminal Trespass; (2) Association with Person Having Criminal Record/Engaged in Criminal Activity; and (3) Threatening to Assault Federal Officers. (Doc. 17-18, p. 1).

5

Notice of Action.

### III. RESPONDENT'S REPLY

The respondent argues that judicial review of the Commission's discretionary decisions is limited, and its factual finding that the petitioner committed Charged Violations Two and Three is rationally supported by the record and not an abuse of discretion. The respondent also argues that the Commission correctly identified the applicable parole guidelines in light of its finding that the petitioner committed Charged Violation Three. Finally, the respondent argues that the Commission was entitled to depart above the parole guidelines, and its decision to do was not arbitrary, irrational, unreasonable, irrelevant, or capricious.

### IV. STANDARD OF REVIEW

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that

a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

Judicial review of a decision by the Parole Commission is limited. See Brown v. Lundgren, 528 F.2d 1054 (5th Cir.1976); Billiteri v. United States Board of Parole, 541 F.2d 938 (2d Cir. 1976). "So long as there are no violations of any required due process protections and the Commission has acted within its authority, [the District Court] will not usurp the Commission's position as established in the statutory scheme enacted by Congress." Stroud v. United States Parole

8

Commission, 668 F.2d 843, 846 (5th Cir. 1982). The District Court may review an action of the Parole Commission to determine whether the decision of the Commission is arbitrary and capricious or an abuse of discretion. Dye v. United States Parole Commission, 558 F.2d 1376, 1378 (10th Cir. 1977). An action of the Commission is arbitrary and capricious, or an abuse of discretion, when it is irrational, based upon impermissible considerations, or when it fails to comply with the Commission's own rules and regulations. Zannino v. Arnold, 531 F.2d 687, 690-91 (3rd Cir. 1976).

When fact findings are challenged, the court's review is limited to whether there is "some evidence" in support of the Commission's decision. Superintendent, Massachusetts Correction Institution v. Hill, 472 U.S. 445, 456-57 (1985) (due process not violated so long as there is "some evidence" in support of prison disciplinary board's decision); Maddox v. U.S. Parole Commission, 821 F.2d 997, 1000 (5th Cir. 1987)("Although the Commission's decision must have a factual basis, judicial review is limited to whether there is "some evidence" in support of its decision). This standard of review does not require "examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence" in support of the challenged administrative decision. Superintendent at 455. A "modicum of evidence," direct or circumstantial, will suffice. Id. at 457. Therefore, the court's inquiry is limited to whether there is a rational basis in the record to support the Commission's decision.

**A. Associating with a Person Having Criminal Record/Engaged in Criminal Activity**

The conditions of the petitioner's mandatory release provide, in part, that: "You will not associate with persons who have a criminal record unless you have permission from your Probation Officer." (Doc. 17-9, p. 2). The petitioner argues that in view of his misunderstanding of the conditions of his release regarding associating with persons having criminal records, there is

9

insufficient evidence to prove, by a preponderance of evidence, that he willfully violated this condition of release. More specifically, the petitioner maintains that he believed he was prohibited from associating with convicted felons, and the individual involved had only a misdemeanor violation. (Doc. 1-2, p. 4).

However, at the revocation hearing, his United States Probation Officer, Thomas Plumley, ("Plumley") testified that he repeatedly told the petitioner that it was not necessary for Edenfield to have a felony record, and that her criminal record of Misdemeanor Offenses was sufficient reason to deny him the opportunity to associate with her. Plumley also testified that he spoke with Edenfield's probation officer and was told that he would not give her permission to associate with the petitioner. Finally, Plumley testified that even after explaining all of this to the petitioner, he continued to associate with Edenfield. Given that Edenfield drove the petitioner to the courthouse, which resulted in his arrest for criminal trespass, the Commission had well more than the "some evidence" required to support its finding that the petitioner violated the conditions of his release as indicated in the charge of Association with Person Having Criminal Record/Engaged in Criminal Activity.

**B. Threatening to Assault Federal Officers**

There appears to be no dispute that on the morning of August 7, 2008, the petitioner telephoned the USPO and spoke with staff support person, Mary Wise ("Wise"). During the conversation, the petitioner expressed his frustration at not being able to reach Plumley by telephone and asked for the name and phone number of his supervisor, Chief Long ("Long"). The petitioner referred to Plumley as a communist dictator and stated his dissatisfaction with his decision that he would not be allowed to date or associate with Edenfield. Wise testified that the petitioner stated

something to the effect of, "You know how I am, I have mental problems and have got a homicide charge already. It's just a matter of time and it's bound to happen again." Wise interpreted these remarks to be threats. (Doc. 17-10, p. 3-4).

The petitioner acknowledged that he was very frustrated because he been unable to reach Plumley by telephone on August 7, 2008. He admitted that he asked for the name of Plumley's supervisor, and he acknowledged that he made a comment about his own record of convictions including homicide. However, the petitioner maintained then and now that he was not making any reference to assaulting or killing either Plumley or Long. Rather, he maintains that he was describing his total frustration with life at the shelter where he was required to live. He testified at the hearing that there was so much noise at the shelter he could not sleep, rest or study. (Doc. 17-10, p. 3).

Under questioning by the petitioner's attorney, Wise acknowledged that the petitioner did not make direct reference to Plumley or Long during his conversation with her. Furthermore, Wise acknowledged that the petitioner's tone was not loud and that he was relatively calm during his phone conversation and that he presented his statements in a matter of fact fashion. (Doc. 17-10, p. 3).

Although different conclusions could be made as to the intent of the petitioner's comments during his telephone conversation with Wise, it is not within the purview of this Court to substitute its own judgment. In light of the petitioner's violent history to which he referred during the call, a history that including killing his stepfather, assaulting an Assistant United States Attorney, and assaulting a correctional officer, the Commission had a rational basis for accepting Wise's testimony and her conclusion that the petitioner was making a threat to assault federal officers.

11

**C. Guideline Range**

The petitioner argues that the evidence presented on the charge of Threatening to Assault Federal Officers was speculative and did not give rise to a reasonable inference that the petitioner threatened to assault any federal officers. Accordingly, the petitioner argues that the Commission only should have relied upon the original offense and the misdemeanor trespass violation and conviction in coming up with a severity rating. More specifically, the petitioner argues that his Severity Category should have been two. Applying a salient factor score of 2 to a Category Two Severity Category would have resulted in a customary range of 16-22 months rather than the 33-44 months calculated. Because the undersigned has concluded that the Commission had a rational basis for finding that the petitioner has violated the terms of his parole by Threatening to Assault Federal Officers, no further analysis of the petitioner's claim regarding his guideline range is required.

**D. Incorrect Application of Statute or Regulation**

The petitioner argues Section 235(b)(3) of the Sentencing Reform Act ("SRA") acts as an *ex post facto* law when it is applied to postpone his release date beyond the maximum guideline range, and is therefore, unconstitutional. The *ex post facto* Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (internal quotations omitted). The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Id. at 30. "To fall within the *ex post facto* prohibition, a law must be retrospective - - that is, it must apply to events occurring before its enactment - - and it must disadvantage the offender affected by it, by altering the definition of

criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997).

As originally enacted, Section 253(b)(3) would have required the Parole Commission to set release dates for prisoners expected to be in custody five years after the new, non-paroleable sentencing scheme (*i.e.*, the Sentencing Guidelines) took effect.[4] The SRA took effect November 1, 1987. On December 7, 1987, or thirty-six days after the SRA took effect, Congress amended Section 253(b)(3) to clarify that all release dates should be set in conformity with 18 U.S.C. § 4206. Accordingly, the Commission continued to have discretionary authority to depart above or below the parole guidelines in appropriate cases. See 18 U.S.C. § 4206 ("The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing"). *Cf.* Kennedy v. Allera, 612 F.3d 261, 266 n.1 (4th Cir. 2010) ("These and other provisions regarding parole from federal convictions, 18 U.S.C. §§ 4201-4218, were repealed by the Sentencing Reform Act of 1984, but remain in effect for individuals convicted of an offense before the effective date of the repeal.") (internal citations omitted).

The petitioner committed his crimes (those with parole-eligible sentences) on February 25, 1985 and July 21, 1986), before Section 235(b)(3) became effective. Accordingly, even if the statute could be said to have created a liberty interest for *ex post facto* purposes, it was not in effect when he committed his crimes and Congress' subsequent clarification does not detrimentally change the

---

[4]As the 11th Cir. noted: "[t] congressional purpose in enacting section 235(b)(3) was not to displace the manner in which the Commission determined parole eligibility dates; rather, in enacting the section, Congress intended solely to establish a "winding up" provision designed to ensure that every inmate serving a pre-Sentence Reform Act sentence would have a parole date set before the dissolution of the Parole Commission in 1992. Coleman v. Honstead, 908 F.2d 906, 908 (11th Cir. 1990).

13

law effective to the petitioner. Accordingly, the petitioner again fails to state a basis for habeas relief.

**E. Decision Outside the Guidelines**

The Commission is authorized to depart above its ordinary guideline range and decline to order parole in appropriate cases. Among the criteria specifically allowed by the Commission's Rules and Procedures is a determination that the inmate is "a more serious parole risk than indicated by your salient factor score due to your history of repetitive assaultive behavior."

As previously noted, the petitioner's guideline parameters indicated a Re-parole Range of 34-44 months. However, the Commission found that the petitioner's incarceration should continue to the expiration of his sentence in approximately 46 months. In reaching this conclusion, the Commission found:

> A decision above the guidelines is warranted because you are a greater risk than shown by your salient factor score and reparole guideline range. Specifically, your current violations involve intimidating, threatening behavior and you have a criminal record going back over 30 years that involves threatening, assaultive behavior. Your prior convictions of Assault and Battery, Voluntary Manslaughter, Aggravated Assault on a Prison's Correctional Officer, Threats to Kill Others and the Physical Assault on a Federal Officer all show that you are capable of highly assaultive behavior when you are confronted with difficult situations. Based on this, the Commission believes that you pose a danger to the community if released.

(Doc. 17-10, p. 6).

The petitioner maintains that there is no recent evidence to support this finding. He again maintains that the Commission's finding that he threatened to assault federal officers is not warranted by the facts. Furthermore, the petitioner argues that any assaultive behavior on his part occurred in excess of 30 years ago, and that he has not engaged in any such behavior in the last 30

14

years.  Contrary to these assertions, the record is replete with documentation of evidence to support the Commission's finding.  As noted in the hearing summary, the petitioner's uncooperative, intimidating and threatening behavior began almost immediately after his release in 2008.  His problems at the United States Courthouse in Savannah, Georgia began just a few weeks after his release from prison.  He made inappropriate, intimidating remarks to federal security officers at the United States Courthouse in Savannah that led to him being banned from the Courthouse; a ban that he promptly violated on more than one occasion.  This clearly provides a modicum of evidence providing a rational basis to support the Commission's decision to impose an upward departure, and the petitioner has failed to establish that the Commission's decision was arbitrary, capricious or an abuse of discretion.

## VI.  RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Doc. 16) be **GRANTED,** the petitioner's §2241 petition be **DENIED** and **DISMISSED WITH  PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: March 7, 2011

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE